THE STATE, EX REL. ROSE, *v.* RYAN ET AL., BOARD OF ELECTIONS OF FRANKLIN COUNTY, ET AL.

(No. 7498—Decided September 25, 1963.)

*Mr. John E. Palcich,* for relator.

*Mr. Earl W. Allison,* prosecuting attorney, and *Mr. Tom L. Thompson,* for respondents Jerry F. Ryan and others, members of the Board of Elections of Franklin County.

*Mr. William B. Saxbe,* attorney general, *Mr. Robert E. Boyd, Miss Joanne Wharton* and *Mr. William Harrington,* for respondent Ted W. Brown, Secretary of State.

*Per Curiam.* Relator, Fred Rose, filed his petition in this court asking that a writ of mandamus issue to require the respondents, members of the Board of Elections of Franklin County, to provide a paper ballot for the next general municipal election in accordance with the charter provisions of the city of Columbus. Respondents demurred to relator's petition on the ground that the petition does not state facts. sufficient to constitute a cause of action.

The petition alleges that relator is "a qualified elector and resident of the city of Columbus," and a candidate for the office of city attorney.

The petition further alleges that the machine-type ballot does not conform to the requirements of the city charter in nine particulars. Specifications for the form of the ballot to be used in municipal elections are found in Sections 201, 210, and 211 of the charter of the city. A part of Section 201 is important to this matter. It is as follows:

"* * * One space shall be left below the printed names of the candidate for each office to be voted for, wherein the voter may write the names of any person for whom he may wish to vote."

Relator urges, in items 4 and 7 of his petition, that the machine-type ballot does not meet the requirements of the city charter as quoted above. The items in the petition are as follows:

"4. The write-in space on said machine type ballot cannot be left below and under the office designated wherein the voter may write the names of any person for whom he may wish to vote."

"7. The machine type ballot contains covered slots at a different location and angle and does not conform with the specific examples set forth in the charter."

The county prosecutor, as counsel for the respondents, urges that certain provisions in the city charter are "antiquated" and that voting machines were not contemplated when the charter provisions were framed. This is obvious when it is recalled that the charter was adopted May 5, 1914, Section 201

still remaining in its original form. Section 210 has not been amended since November 7, 1933.

Attention is directed to *State, ex rel. Devine, Pros. Atty.*, v. *Hoermle* (1959), 168 Ohio St., 461, in which the court held the Charter of the City of Columbus to be controlling over state statutes in filling vacancies on the city council. Recognizing that there should be some legal method of filling a vacancy, the court still says, with finality, at page 464, as follows:

"* * * However, it is necessary to amend the Columbus charter in order to provide such a legal method. This court has no power or authority to do that."

The position taken by the Supreme Court in that case is followed in *State, ex rel. Allison, Pros. Atty.*, v. *Jones* (1960), 170 Ohio St., 323.

This court held that charter provisions are controlling in a case involving the same parties as in the instant case, in a decision under date of April 2, 1963, *State, ex rel. Rose*, v. *Ryan*, 193 N. E. (2d), 540. This court relied upon and followed the case of *State, ex rel. Haffner*, v. *Green et al., Board of Deputy State Supervisors and Inspectors of Elections* (1953), 160 Ohio St., 189, in which the court says, at page 193, as follows:

"* * * a charter city has full authority to provide for the nomination of their elective officers, * * *."

By the same token, the charter city has full authority to prescribe the method of election of its officers.

Section 3507.05 (D), Revised Code, if it were controlling, would help to prevent the demurrer of the respondents from being effective. Requirements for voting machines are set out in the section including the provision as follows:

"It shall permit each voter to deposit, write in, or affix, upon devices provided for that purpose, ballots containing the names of persons for whom he desires to vote, whose names do not appear upon the voting machine. * * *."

That language, together with the provision for alternative ballot devices found in Section 3507.11, Revised Code, suggests that the request for a separate paper ballot for use in the election of a city official, for which office there has been no formal nominations, is sufficiently well founded to require a decision upon the merits and not upon demurrer.

By virtue of the provisions of the Charter of the City of

Columbus, which are controlling over statute, and by reason of the support found in the language contained in Sections 3507.05(D), 3507.11 and 3507.15, Revised Code, it is clear that the petition of relator states a cause of action sufficient to withstand the demurrer of the respondents.

The demurrer of the respondents is overruled, and respondents are given leave to answer or plead on or before October 4, 1963.

*Demurrer overruled.*

Duffey and Troop, JJ., concur.

Bryant, J., concurring in part. As I view it, the purpose of a petition is to set forth the claims, allegations and contentions of the plaintiff or relator with sufficient definiteness and clarity to show, among other things, the operative facts giving rise to the jurisdiction of the court, the capacity or relation of the parties to the litigation, the acts or failures to act which give rise to the suit and the remedy or relief which is sought.

At the time of the argument of this case, counsel for the board of elections stated, and it was also stated in the brief on behalf of the board, that the petition of the relator contains defects which could be raised by motion but which defects were specifically waived on behalf of the board.

It seems obvious to me that the relator herein, who is an attorney at law admitted to practice in the courts of Ohio, seeks to bring this suit as a write-in candidate for the office of city attorney and that he seeks to call attention to what he claims are improper, insufficient or illegal steps taken and preparations made by the board of elections for write-in votes for the office of City Attorney of the City of Columbus.

It is equally obvious that no person can qualify as a candidate, write-in or otherwise, for the office of City Attorney of the City of Columbus unless he is an attorney at law, for the very simple reason that Section 66 of the city charter expressly and clearly provides that the City Attorney of Columbus "*shall* be an attorney-at-law, admitted to practice in the state of Ohio." Relator is in fact such an attorney at law, and the petition should have so alleged but it did not. It merely said he was a candidate and an elector.

If it be the position of the relator herein that he brings

this action as a qualified write-in candidate for city attorney, it would seem that it was both proper and necessary to make an affirmative allegation of the fact in the petition. A careful examination of that document fails to disclose any reference to relator's professional qualifications. I repeat, it is assumed, and nowhere questioned, that relator *is in fact a duly qualified attorney at law within the meaning of Section 66 of the city charter.*

My point is that, no reference or allegation having been made to this fact, it would appear difficult to consider this cause of action as asserting the special and direct interest, if any, of one of the several write-in candidates for the office of city attorney without such allegation being set forth in the petition.

I make no statement and express no opinion with reference to the question as to what such rights, if any, may be, as compared to the general rights possessed by an elector, reserving that for consideration at the appropriate time.

(Decided October 14, 1963.)

On the merits.

Duffey, J.   This is an action in mandamus filed in this court on September 13 against the respondents as members of the Franklin County Board of Elections. Prior to trial, the Secretary of State was made a party and has participated in the trial and filed briefs. The case is before the court upon the pleadings, evidence, stipulations of the parties and briefs.

Pursuant to Section 200 of the Columbus City Charter, the next regular municipal election will be held on November 5, 1963. This is also the date established by state statute for the election of certain nonmunicipal offices and for certain nonmunicipal issues.

The relator is a resident and elector of the city and is a candidate for the office of city attorney. Under Section 202 of the charter, that contest is by write-in vote only. *State, ex rel. Rose,* v. *Ryan,* 193 N. E. (2d), 540 (April 2, 1963). This is the first such *municipal* contest since the advent of voting machines in Franklin County. The respondent board of elections has prepared a proposed ballot, combining the contests for

municipal and nonmunicipal offices and issues, there being no provision in the Columbus Charter requiring separate ballots. Compare Section 3505.04, Revised Code, paragraph 1, and Section 3505.07, Revised Code. The ballot utilizes the voting machine.

In the approximate middle of the machine ballot there is a horizontal row containing printed titles for the various offices. The title for the city attorney contest is in the third position. Another row below the title row contains the names of nominated candidates in direct alignment with the titles. In the city attorney position no names appear. The voting levers for that contest are permanently locked and rendered unusable by a metal fixture. Just above the titles there is a row containing the issues. Approximately 10 inches above the title row there are a number of slots in the machine face with sliding metal covers. The slots and the titles are numbered but they are not in direct alignment. Pushing up the cover of a slot reveals a paper on a roll upon which a name may be written. The movement of the metal cover also locks the voting lever in the candidate row at the corresponding numbered position. On the exhibit introduced by the parties there is one large slot about three by two inches, which is numbered to correspond with the mayor's position in the title and candidate rows. For the other municipal contests the slots measured two by one-half inches. There is no title or other printed matter above any of the slots. However, at the time of trial, the respondent board of elections altered the format by adding a printed pointing-hand and a statement identifying the slots as write-in spaces. This was placed at the left of the slots. This is also the only indication on the ballot face of the existence of a write-in only contest for city attorney, or of the right to vote a write-in on other municipal contests.

The petition attacks the ballot as improper on a number of grounds. However, the evidence and argument have narrowed relator's challenge. The primary contention goes to forms of the ballot, especially the location of the write-in space in relation to the title for the contest. That relator has the standing to sue and challenge the format is established. *State, ex rel. Wesselman,* v. *Board of Elections of Hamilton County* (1959), 170 Ohio St., 30, paragraph one of the syllabus.

The respondent board of elections has filed an answer

containing four defenses, which answer has been adopted by the Secretary of State. The first defense is, in effect, a general denial of any violation of law, alleging that the proposed ballot is a proper ballot. The second defense alleges laches. The third alleges that to provide a *paper* ballot for the municipal election would be "an unjust burden" because it would cost money and result in "chaos and confusion." The fourth defense is that the Secretary of State has issued an order to the board that the election be held on voting machines. The brief of the Secretary of State raises a fifth point. This is the flat contention that the board of elections has no legal duty, as opposed to discretionary right, to conduct a municipal election in a charter municipality. This contention is a challenge to the sufficiency of the cause of action, and we shall therefore consider it regardless of the failure to allege it in the answer.

Does the proposed ballot violate any specific requirement of law as to format and, in particular, relative to the location of title and voting space? To deal with that question, it is obviously necessary to first determine what law controls the format of the ballot.

The brief of the Attorney General and that of the prosecuting attorney both candidly concede that by virtue of Article XVIII of the Constitution a charter municipality has full authority to provide for and control its municipal elections. Such a charter provision is paramount and superior to a state election statute and is subject only to applicable constitutional limitations. The case authorities are numerous and commence as early as *Fitzgerald et al., Board of Deputy State Supervisors, v. City of Cleveland* (1913), 88 Ohio St., 338, decided within months of the adoption of Article XVIII. Attention is directed, in general, to the recent cases of *State, ex rel. Devine, Pros. Atty., v. Hoermle* (1959), 168 Ohio St., 461, and *State, ex rel. Allison, Pros. Atty., v. Jones* (1960), 170 Ohio St., 323. With respect to municipal elections, the authorities are also numerous. Attention is directed in particular to *State, ex rel. Haffner, v. Green et al., Board of Deputy State Supervisors and Inspectors of Elections* (1953), 160 Ohio St., 189; *State, ex rel. Sherrill, v. Brown, Secy. of State* (1951), 155 Ohio St., 607; *State, ex rel. Rose, v. Ryan*, 193 N. E. (2d), 540, rendered April 2, 1963; and the decision in the instant case on demurrer to the petition at page 364 herein.

370

Thus, a charter can prescribe the qualifications of electors and candidates, the time of holding the municipal election, and the method, manner and procedure for conducting such elections. There is and can be no controversy on the proposition that the Columbus Charter may establish specifications as to the form, make-up and format of the ballot for its municipal offices, and such specifications control over any provisions of state statutes to the contrary.

Of course, a charter can, and in practice many do, adopt and incorporate substantial portions of the state statutes. See *Reed* v. *City of Youngstown* (1962), 173 Ohio St., 265. Under those circumstances, the statute becomes a part of the charter. As applied to municipal affairs, the statute then derives its efficacy as law from the charter and not from the authority of the General Assembly. Section 200 of the Columbus Charter is of this type, adopting state election statutes "except as otherwise provided in this charter." See, also, Section 232 of the charter.

Section 201 of the charter requires a nonpartisan ballot. Together with provisions elsewhere, it requires a "printed" ballot. A machine is, of course, a ballot. *State, ex rel. Automatic Registering Machine Co.,* v. *Green, Dir. of Finance* (1929), 121 Ohio St., 301. It is also, in our opinion, a printed ballot—notwithstanding the fact that the paper ballot is printed and then attached to a machine. The section also requires the rotation of names. No attack has been made on the ability to comply. It requires that the ballots be combined into tablets. However, ballots so combined must, of course, be separated before use by the voter. The printed matter for the present ballot could, if necessary, be combined in such series, then separated and placed on the machine.

The last provision of Section 201 of the Columbus City Charter must be read in conjunction with Section 210. The latter requires that on a municipal ballot "the names of candidates for each office shall be *arranged under* the *title* thereof *as hereinbefore provided.*" (Emphasis added.) The last sentence of Section 201 provides:

"One space shall be left below the printed names of the candidate for each office to be voted for, wherein the voter may write the names of any person for whom he may wish to vote."

The charter clearly requires that a write-in vote be permitted for each and every municipal office, a provision in direct contradiction to state statute. See Section 3505.03, Revised Code, paragraph 8, and Section 3505.04, Revised Code, paragraph 9. These sections are general statutes with respect to ballots, and are made applicable to voting machines under Section 3507.15, Revised Code. The respondent board has recognized that this charter requirement controls since the proposed ballot does provide for write-in votes on all municipal offices.

We think it equally apparent that these provisions of the charter also specify that the space for a write-in vote be provided "below" the printed names of candidates and "under" the titles. On the proposed ballot this space is *above* the printed names—some 10 inches above and not in direct alignment.

Respondent has argued that this is an antiquated requirement, and that the ballot is a substantial compliance with the charter. In the context of the charter, below can only mean below. An examination of the state election statutes is also instructive. Repeatedly, throughout Title XXXV of the Revised Code, the statutes explicitly specify the location of titles, names and spaces. Nor are such detailed specifications surprising. Anyone familiar with elections is aware of the numerous abuses, advantages and unfair effects that can be obtained through the manipulations of a ballot. Nor is it surprising to this court to find that detailed specifications can become troublesome. Human lack of foresight and failure to maintain currency in specifications may be deplored but are frequently encountered. Compare the statutory specifications for legislative printing considered by this court in *Columbus Blank Book Co.* v. *Maloon, Dir.* (1963), 116 Ohio App., 393. Nor does the fact that a requirement is troublesome, or thought by many to be undesirable, make it a "technical" rather than a substantive requirement. It is the purpose of the requirement and not its wisdom that is relevant. In our opinion, specifications on format are not mere technicalities. The Supreme Court has repeatedly held that requirements of election laws are mandatory and must be strictly complied with. *Pierce* v. *Brushart et al., Board of Elections of Scioto County* (1950), 153 Ohio St., 372, at page 378; see, also, *State, ex rel. McGin-*

*ley,* v. *Bliss et al., Board of Elections of Summit County* (1948), 149 Ohio St., 329; *State, ex rel. Fowler,* v. *Board of Elections of Fulton County* (1933), 126 Ohio St., 582; *Koehler, Jr.,* v. *Board of Elections of Butler County* (1932), 125 Ohio St., 251, and especially at page 256. While the temptation is sometimes great, a court is not entitled to ignore the plain meaning of a positive law simply because as written, together with the failure to amend it, there may be what many consider to be an undesirable result. This is particularly true of a fundamental instrument such as a charter which the people have adopted.

We have noted the views of the Montana court in *State, ex rel. Fenner,* v. *Keating,* 53 Mont., 371, 163 P., 1156. We doubt that we would subscribe to such a position on the prerogatives of a court. However, the court there was dealing with the state Constitution, the amendment of which is a difficult undertaking. We think that the ability of the proper authorities, and particularly the people of Columbus, to readily correct their own enactments, is an important factor in determining whether a court is "interpreting" or "legislating" a provision of law. This court and the Supreme Court have on several occasions most pointedly observed that the Columbus Charter does contain "antiquated" provisions and deficiencies.

We have also considered the fact that as to the city attorney contest there are no printed names. However, the two sections of the charter clearly define the format of the ballot and, in our opinion, clearly cover the matter. Should it be assumed that the charter is silent as to a strict write-in contest, then state statutes would apply by virtue of Section 2, Article XVIII of the Constitution, and Section 200 of the Columbus Charter. In that regard, Chapter 3505 of the Revised Code contains the basic provisions with respect to ballots. Chapter 3507 of the Revised Code covers only certain special aspects peculiar to voting machines. Section 3507.07, Revised Code, provides that the names of candidates shall be "under the title of the office sought." A similar provision is found in the last paragraph of that section, held unconstitutional under Section 2a, Article V of the Constitution. *State, ex rel. Wesselman,* v. *Board of Elections of Hamilton County* (1959), 170 Ohio St., 30. No mention is made anywhere in Chapter 3507 as to the lo-

cation of write-in spaces. However, Section 3507.15, Revised Code, provides:

"* * * The provisions of Title XXXV of the Revised Code, not inconsistent with the provisions relating to voting machines, apply in any county or municipal corporation using the voting machine."

Section 3505.04, Revised Code, provides:

"* * * *

"* * * if no candidate has been nominated for an office for which an election is to be held, blank spaces shall be provided under the title of said office equal in number to the number of persons to be elected to such office."

See, also, Section 3505.03, Revised Code. We note that an Attorney General's opinion interpreting this statute uses the words "below" and "underneath." (Opinions of Attorney General [1949], 487, No. 806.) Perhaps it should be observed that the voting machine chapter was not drafted with the same careful attention to detail found in the older, more tested provisions of the general ballot requirements in Chapter 3505.

What has already been said adequately disposes of the first defense. It also disposes of the fourth defense relating to the order of the Secretary of State. No such order could justify a ballot which violates a charter provision.

The second defense is laches. Relator has attacked the format of the ballot. This is the first such contest in a Columbus municipal election since the adoption of voting machines in Franklin County. The suit was filed September 13, 1963. Unfortunately, the parties were not ready to submit it to the court until October 10, 1963. We think it took considerable diligence by relator to determine exactly what type of ballot and what format the board proposed to use. Sample ballots were not delivered to the Courthouse Annex until September 16, 1963. The board has changed the format in at least one respect as late as Monday, October 7, 1963. Relator cannot be fairly accused of a failure to make timely objection.

The third defense relates to the "unjust burden" and cost of complying with the charter. A careful review of the evidence shows much vagueness and considerable conflict in estimates of cost. Respondents' principal witness assumed paper ballots

would be necessary—a point we consider *infra*. Even so, he admitted that no inquiry had been made as to rental costs, or even as to availability of equipment. He included stalls, although it is conceded that the machine stall complies with the law. The measurements of paper ballots and the space available on the ledge of the machine indicate that the machine stall may be entirely usable. In any event, there is absolutely no *evidence* that the board could not provide all things necessary within its present budget. Nor is there evidence that additional money is not available. Nor is there evidence that the county commissioners would not appropriate moneys. Finally, attention is directed to Section 3501.17, Revised Code, relating to the failure of county commissioners to appropriate sufficient funds. Respondents were provided with a full trial and full opportunity to present evidence. In an apparent misstatement, one brief refers to the "record made at pre-trial conference." A pre-trial conference was held Monday morning, October 7. At the conclusion, the presiding judge asked if the parties could present their evidence at 2:00 p. m. that afternoon. All parties agreed. No objections were made then or later. No continuances were requested. After presenting evidence, all parties rested. Accordingly, if such a defense has any legal significance, the respondents have failed to establish any facts in support of their allegations.

The final issue presented is the contention of the Secretary of State that while he and the board have discretion and authority to conduct a charter municipal election, there is no legal obligation upon them to do so.

The state of Ohio and its municipalities can, and in the public interest should, co-operate in the conduct of elections. Both have basic laws to accomplish that result. It is, of course, clear that the Secretary of State is an officer and the board of elections is an agency of the state of Ohio. See Section 3501.06, Revised Code; *State, ex rel. The Columbus Blank Book Mfg. Co., v. Ayres, Auditor* (1943), 142 Ohio St., 216. They obtain authority from and incur duties under state statutes. On the other hand, a municipality can authorize state officials and agencies to undertake municipal administrative functions. The Columbus Charter does so authorize the respondents by its adoption of state election statutes. Thus, the *authority* of

these officials with respect to such a municipal election is the product or combined effect of state law and city charter. Clearly, too, while a charter can authorize, it cannot require state officials to act. But it is most patently true that the *General Assembly* can require them to perform that which they are authorized to do!

The Secretary of State's contention, therefore, is simply a proposition that the statutes authorize the conduct of such elections but do not require it. The answer to that proposition necessarily turns upon the statutes.

Under Section 3501.01, Revised Code, a "general election" specifically includes a regular municipal election such as provided for in the Columbus Charter. Any other municipal election would be a "special election." Throughout Title XXXV the statutes refer to "elections."

Section 3501.05, Revised Code, provides:

"The Secretary of State shall:

"* * *

"(G) Determine and prescribe the forms of ballots * * * required by law for use by candidates, committees, and boards;"

In the context of this statute, and the whole of Title XXXV, the word "law" cannot be confined to state statutes.

In Section 3501.11, Revised Code, the duties of the board are also stated as "shall" and relate to "elections." Attention is also directed, in particular, to Section 3505.01, Revised Code, that the secretary "shall" certify the forms of ballots to be used at a "general election." Section 3505.04, Revised Code, provides for nonpartisan ballots for "municipal corporations," including those having "charters which provide for separate ballots for elections for such municipal offices."

We consider respondents' extensive protests about cost allocation and charge back to be most anomalous. The main theme of this line of argument is the financial burden cast on the "county" if it must conduct "city" elections. It is well to remember that the municipalities are in the counties, and the municipal residents pay county and state taxes—frequently the major share of such taxes. An adequate analysis of the tax equity in the raising of the funds expended on elections would require considerable economic analysis of the incidence of the taxes. That the expenditures are for a public purpose and

within the power of the General Assembly to authorize and require is apparent. That the equalization and equitable distribution of such costs between taxpayers and governmental units is a matter for the General Assembly is equally obvious. We note that in Section 3501.17, Revised Code, specific provision is made for apportionment of costs, and that further provisions are made elsewhere in the statutes. Whether these are adequate is a matter of opinion, and not a matter for judicial inquiry. Thus, we find nothing horrendous in the fact that such expenses as may result will partially fall upon the county.

We see no point in reviewing the numerous provisions and context of the phrases in Title XXXV. Suffice it to say that, in our opinion, the statutes quite clearly and wisely require the respondents to conduct such elections wherever they are authorized to do so.

There is ample statutory authority for the use of paper ballots, either for a single contest or for the entire municipal election. Such ballots can readily conform to the charter. However, the function of this court is to determine in what manner the proposed ballot fails to conform to law, and to order a *proper* ballot. The respondents must determine how best to meet that requirement. Relator has requested relief only as to the contest for city attorney. Whether it is feasible to change the format of the machine ballot for that contest only, is a matter for the respondents to decide.

The mandate of this court will be limited to requiring a proper ballot, in conformance to this opinion, in the contest for city attorney of Columbus. A writ of mandamus so providing may be submitted.

*Judgment for relator.*

BRYANT and TROOP, JJ., concur.

BRYANT, J., concurring. This court has heretofore held that under the circumstances here present—where the vacancy arose after the final date for filing petitions for the primary election—there can be no primary and hence there are no names authorized to be printed on the ballot for city attorney.

In this case, of course, the ballot is a voting machine. A

most unusual situation is present as a result. On the face of the voting machine about shoulder high are three horizontal rows, the top being, "Questions," below that, "Offices," and still below that, "Candidates."

Counting from the left, in position three is the title of "City Attorney" but under it there are no names, as none were nominated. Only one voting lever is reserved for voting for city attorney and that is locked so it can not be moved.

Ten or more inches above the row labelled "Questions" is a series of slots, numbered one to eleven. None is labelled "Write-in Row" and the instruction is "If Write-in is Permitted, Raise Slide Above Corresponding Office Column Number and Write Name on Exposed Paper."

Thus it is, that although the charter clearly and expressly authorizes a write-in for every municipal office, the voter is left in a quandary and must determine at his peril whether or not he is raising the proper slide for write-in.

It is clear from the testimony before us that if he makes an error and raises the wrong number, he is liable to lose his vote several ways. If, instead of raising slide three, he raises and writes the name of his city attorney choice on slot two, he will have cast one vote for him for mayor and he will find the two levers for mayor locked and unable to be moved.

If the voter makes a mistake and raises the slide on number four, he either will have cast one vote for his favorite for city council or, because that is multiple choice with four to be elected, he may have jeopardized all his votes for four councilmen.

All this would be prevented or at least reduced to a minimum by the simple expediency of putting a label of city attorney above the write-in slot for city attorney.

As now arranged the voting machines (1) have a label— City Attorney—at a place where it is impossible to vote for city attorney, and (2) reserve one of eleven slots for write-in but carry no mark or title at all.

The circumstances are quite unusual and it would seem that a remedy is called for which is adequate. If the board of elections feels the label "City Attorney" must remain in the place where no one can possibly vote for city attorney, I still see no reason why, under such rare circumstances, a second label

should not be attached which will tell the elector where he can—not where he can't—vote for city attorney.

As to whether paper ballots are authorized to be used along with voting machines, I am unable to agree with the contention of the Attorney General that this is not authorized and would work an impossible hardship.

Without expressing any opinion as to whether or not they are required here, I note that Section 3507.11, Revised Code, being part of the "Voting Machine" chapter, provides as follows:

"If a board of elections deems it impracticable to use voting machines for all or any part of an election in any precinct in which voting machines have been provided, it shall arrange to have the voting in such precinct conducted by paper ballots or voting machines, or both."

In the case of *State, ex rel. Benjamin, a Taxpayer,* v. *Brown, Secy. of State* (1955), 164 Ohio St., 189, the first paragraph of the syllabus reads as follows:

"1. Under the provisions of Section 3507.11, Revised Code, if a board of elections deems it impractical to use voting machines for all or any part of an election in any precinct in which voting machines have been provided, it shall arrange to have the voting in such precinct conducted by paper ballots or voting machines or both."

(Decided October 25, 1963.)

On Application for contempt charge.

Bryant, J. The sole question before the court at this time arises under a "charge of contempt for failure to fully comply with peremptory writ of mandamus." The charge was positively sworn to and filed by Fred Rose, relator herein, and the charge named Jerry F. Ryan, William B. Haines, William Schneider and Charles Davies, as members of the Franklin County Board of Elections, and Ted W. Brown, as Secretary of State, respondents herein.

In further support of the charge, Rose attached to it an additional separate affidavit, signed and sworn to by him, and also (1) a photo-copy of a portion of the minutes of the respondent board of elections and (2) a photo-copy of a two-page

letter by Secretary of State Brown, dated October 21, 1963, and addressed to the respondent board of elections.

The contempt charge arises following prior action by this court and in particular a decision, opinion rendered on October 14, 1963 (page 367 herein), by Duffey, J., concurred in by Troop, J., and the writer, with the journal entry prepared by the court and filed on October 17, 1963.

In substance the contempt charge alleges that the respondents as members of the board of elections and as Secretary of State "have failed, neglected and refused to fully comply with a peremptory writ of mandamus issued by the court on the 17th day of October, 1963, and served upon the respondents in conformance with law." The contempt charge continues, in part, as follows:

"Relator says that the respondents are not providing a 'proper ballot' for the write-in race for city attorney in accordance with the form of ballot and specifications required by the Columbus City Charter. That proper instructions do not appear as required; that the instructions are in conflict and confusing to the electorate; that the instructions on the voting machine violate the provisions of the city charter; and that the instructions on the voting machine are incomplete and in conflict with other instructions to the voters.

"Relator says that the respondents do not have authority or discretion to change the explicit provisions of the city charter. Relator attaches hereto and makes a part hereof a separate affidavit, copies of two motions and a letter to respondent board by respondent, Ted W. Brown.

"Wherefore relator ask (asks) that the respondents be required to provide a proper ballot with all the legal requirements in accordance with the order and decision of the court and in accordance with law together with the relief asked in relator's amended petition."

It appears that sometime after the decision and journal entry in this case and the service of the peremptory writ of mandamus upon the respondent board and the respondent Secretary of State, the respondent board held a meeting and that two motions were duly made and seconded and each resulted in a tie vote.

One of them was a motion by Mr. Ryan, seconded by Mr.

Haines, "that this board shall prepare paper ballots for the office of city attorney for the Columbus city election, 1963" with certain other instructions of a procedural nature. This motion received favorable votes from Messrs. Haines and Ryan and negative votes from Messrs. Davies and Schneider.

The following is the text of the motion which ultimately prevailed:

"Motion by Mr. Schneider, second by Mr. Davies, that the space reserved for the title of the office of City Attorney for the City of Columbus on the regular title row of voting machines be blocked out, that a printed sticker be placed over and above the write-in slot pertaining to that office, and that the sticker properly designate that as the write-in slot for the office of city attorney. Roll call: Yeas, Mr. Davies, Mr. Schneider, 2. Nays, Mr. Haines, Mr. Ryan, 2."

Both questions above referred to having resulted in tie votes by the respondent board were submitted to the Secretary of State who by letter of October 21, 1963, addressed to the board in the conclusion thereof wrote as follows:

"In my opinion, therefore, not only as a matter of compliance with the order of the court, but as a matter of administrative policy, the voting machine provides a proper method for conducting this election.

"I therefore vote no on the motion of Mr. Ryan, and yes on the motion of Mr. Schneider, and resolve the issue in favor of the use of properly labeled voting machines."

The third and fourth paragraphs of the Secretary of State's letter read as follows:

"I have carefully studied the opinion and order of the court as well as the pertinent provisions of the Columbus City Charter. It is my opinion that the order of the court may be fully complied with by conducting the election for the office of city attorney on voting machines, placing the label bearing the title of the office above the appropriate write-in slot, instead of below the locked-out levers.

"If the conduct of the election in that manner complies with the order of the court, there are certainly many other compelling reasons which argue for conducting the election that way. Franklin County has expended considerably more than a million dollars in the purchase of voting machines. The ma-

chines which it has purchased are widely in use in many counties in Ohio, and a challenge such as that which has now been made has never been made before. The voting machines provide a convenient and secure method of conducting elections including elections which must be entirely by write-in votes. Particularly when the title of the office is placed on a label above the write-in slot, there is no reason why every interested voter may not raise the slot and cast his vote."

In the memorandum in support of the contempt charges, relator again urges that this court order the board of elections to use a paper ballot contending it is the only ballot that can "fully comply with the city charter" and also "that a paper ballot is necessary for full compliance." We believe this argument was fully answered in the opinion of this court rendered on October 14, 1963, written by Duffey, J. (See page 367 herein.)

In the alternative, relator contends that if a voting machine is to be used additional changes in the instructions are required. Relator points out that since the time the action now before us was filed three changes have been made on the voting machine as follows: "1. Added write-in label (Hand) on the upper left. 2. Blocked out of city attorney titled on *Regular Title* row. 3. City attorney title Label placed over Slot No. 3 in sticker form."

Relator contends that none of the three changes will appear on instructions posted at the precinct; and, as a result, it is the contention of relator that the posted instructions should show the above changes and all the slots provided on the machine and that the slide or cover should be permanently lifted in case of the write-in space for city attorney.

Counsel for the respondents have filed a memorandum in opposition in which they contend that the Charter of the City of Columbus does not require a paper ballot and that the journal entry of this court which was incorporated into the writ of mandamus makes no reference to a paper ballot. This brief concludes by contending that the action taken by the election officials "is in full compliance with the order of this court to provide a 'proper ballot' in the aforementioned electoral race." Respondents also contend that the machine as now arranged for the coming election has the title of the office above the

write-in slot and that, because no printed names are involved in the city attorney's race and entitled to appear on the face of the voting machine, the voting machine now is in full compliance and is a proper ballot.

In this connection, at the hearing held on the contempt charge photographic representations of the face of the voting machine as now ordered by the respondent election officials were presented and received by the court after proper qualification. From these it would appear that the title of city attorney has been blocked out in the row labeled "Offices."

It would also appear that a label has been placed over the write-in slot reserved for election of a city attorney and that this label among other things contains the following legend: "City Attorney," followed by a statement as to the termination date of the term of office and the further statement "vote for one."

In addition, at the bottom of this label there is an arrow pointing down to the write-in slot, which is position No. 3 in the row of write-in slots.

We observe, therefore, that at this time the face of the voting machine contains a large hand at the upper left part of the machine with the words "write-in row" in large type and beneath it a further legend was written in caps "if write-in is permitted—raise slide above corresponding office column number and write name on exposed paper."

As previously stated, this is a hearing to determine the issues raised by the charge of contempt against the election officials involved on behalf of relator herein.

It is clear that in determining the contempt charge now pending before us, we are limited to the issues raised in the pleadings as further limited by the parties in open court and in the briefs.

Upon consideration of this matter we are of the opinion that no contempt of the peremptory writ of mandamus has been shown, and the application for citation for contempt, therefore, is not well taken, must be overruled, and it will be, and hereby is, so ordered.

*Application overruled.*

DUFFEY and TROOP, JJ., concur.