RESNICK v. BOARD OF SUPERVISORS OF
ELECTIONS OF BALTIMORE CITY

[No. 356, September Term, 1966 (Adv.).]

*Decided, per curiam, August 22, 1966.*

*Opinion filed September 14, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Thomas Waxter, Jr.* and *Joseph H. H. Kaplan* for appellant.

*Edward L. Blanton, Jr., Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

Alan M. Resnick filed a petition in the Superior Court of Baltimore City on August 17, 1966 for the issuance of a writ of mandamus directed to Thomas P. Kelmartin, Marshall W. Jones and Betty M. Silbert, constituting the Board of Supervisors of Elections of Baltimore City (the Board) to require the Board to arrange the official Democratic primary ballot in the Fifth Legislative District of Baltimore City (Fifth District) for the Primary Election to be held in Baltimore City (the City) on September 13, 1966 to provide for seven vertical

columns with five names in each column for candidates for the House of Delegates from that legislative district. The Board appeared the same day, filed its answer and the petition was heard on its merits the same day before Judge Perrott, who took testimony, heard the arguments of counsel for the respective parties and held the matter sub curia until August 19, 1966 when the lower court filed a memorandum opinion and denied the petition. Judgment absolute for costs was also entered on August 19 and an appeal to this Court was taken the same day. We heard the appeal on August 22, 1966, decided it that day and filed a per curiam order reversing the lower court, directing that the writ of mandamus as prayed be issued forthwith and stating that we would later file an opinion indicating our reasons for our reversal of the lower court. These reasons follow.

The facts are not in dispute. The petitioner, Mr. Resnick, is a duly qualified candidate in the Democratic Primary Election to be held on September 13, 1966 in Baltimore City for the Maryland House of Delegates. In addition to him, the Board has certified thirty-four other Democratic candidates for the House of Delegates in the Fifth District, so that there are a total of thirty-five such candidates in that District.

Voting machines are to be used throughout the City for the coming primary election and these voting machines contain forty vertical columns with each column containing nine available spaces. The Board assigned five spaces in each vertical column to the Democratic candidates and three spaces to the Republican candidates for the arranging of names. There were fewer Republican candidates in the coming primary election than there were Democratic candidates and this fact accounts for this action by the Board. This action is not challenged in this appeal.

Mrs. Silbert, one of the Democratic members of the Board, testified at the hearing on August 19 that she prepared the arrangement of the ballot which the Board adopted on August 7, 1966. She stated that because in the Second Legislative District of Baltimore City (Second District) there were thirty-six Democratic candidates for the House of Delegates, a total of eight available columns was necessary for use in arranging the

names of Democratic candidates for the House of Delegates in the Second District and the Board determined that there should be uniformity in this number of columns throughout all legislative districts in the City in order, allegedly, to avoid confusion and to avoid giving an alleged advantage to candidates for the office of judge of the Municipal Court who would otherwise face, in other legislative districts, a blank column thereby giving them greater visual exposure.

The Chief Clerk of the Board, E. Paul Mason, Jr., submitted a second proposed arrangement of the ballot in the Fifth District which would have arranged the names of the Democratic candidates for the House of Delegates in 7 columns of 5 names each (a total of 35 names) rather than in 8 columns, 3 of which contained 5 names each and 5 of which contained 4 names each (also a total of 35 names) as suggested by Mrs. Silbert. The Board rejected Mr. Mason's suggestion and adopted that of Mrs. Silbert.

Mrs. Silbert testified that she did not know how the Republican arrangement was determined, stating "we are not familiar with their formation at all." There is no question that the Republican arrangement varies from the Democratic arrangement, as appears from the arrangement of names for Republican candidates for Ward Executive (an office which is not elective in the Democratic Party) and for State Committeemen in the ballots for the First, Third, Fourth, Fifth and Sixth Legislative Districts of the City. She further testified that once the Board determined to have eight available columns for the Democratic candidates for the House of Delegates city-wide, the arrangement of candidates in each Legislative District was determined by dividing the total number of District candidates by eight, so as to make sure that each vertical column had at least one space filled. She stated that this arrangement meant that in several Districts, the third, fourth and fifth spaces in the vertical columns available were not used. She said that if, for example, there had been 5 candidates for the House of Delegates in the Fifth District, she would have arranged the names on the 5 top spaces of the first 5 vertical columns, but if 10 candidates were running in that District, she would have ar-

ranged 2 columns of 2 names each and 6 columns with 1 name each.

As the names are arranged in alphabetical order of the letters in the surnames of the candidates, the name of Mr. Resnick in the arrangement adopted by the Board would appear as the third name in the list of four names in the sixth column, whereas in the arrangement suggested by Mr. Mason (which the petitioner contends is the only lawful arrangement), his name appears at the top of the sixth column. It was stipulated that Mr. Resnick, the petitioner, could produce a qualified expert to testify that there was a voter advantage to a candidate whose name was arranged in the top space on a vertical column on the ballot. The trial court indicated that it could take judicial notice of this advantage.

The ballots show on their face that there is a clear separation by means of a vertical line between the names of candidates for the House of Delegates and the names of candidates for the Municipal Court. In the ballot for the Fourth Legislative District of Baltimore City (Fourth District) there are 8 columns used for the names of candidates for the House of Delegates consisting of 3 columns with 3 names and 5 columns of 2 names (19 candidates in all) so that although there are names of candidates for the House of Delegates immediately adjacent to the names of two of the candidates for the Municipal Court (which names immediately follow on the right) and are arranged in 3 columns with 3 names each, there is no name of a candidate for the House of Delegates immediately adjacent to the name of the candidate for judge of the Municipal Court whose name is at the bottom of the first column. On the portion of the ballot allocated for the names of the Republican candidates, there are no candidates for the House of Delegates listed in the eight reserved columns except in the Third Legislative District (Third District) where the names of 11 candidates are listed with 2 names in the first 3 columns and 1 name in the remaining 5 columns. This means that so far as "visual exposure" of the 3 names of candidates for judge of the Municipal Court is concerned, in all districts except the Third District there is a block of at least eight empty columns between the space allocated for names of candidates for the State

Senate and those three names. In the Third District, only one name of a candidate for the House of Delegates is immediately adjoining the name of the candidate for judge of the Municipal Court on the right while there are five vacant spaces opposite the name of the candidate for judge of the Municipal Court listed second in the first column and there are eight spaces opposite the name of the candidate for judge of the Municipal Court listed third in the first column.

The applicable law appears in the provisions of Code (1957) Article 33 titled "Elections." Section 122 of that Article provides, under the heading "Voting machines—Ballot Labels," the following:

> "(a) *Requirements.*—The form and arrangement of ballot labels *shall* be in accordance with the provisions as to ballots contained in §94 of this Article * * *."

Section 94, titled "Ballots—Form and Arrangement" provides, in part:

> "(b) *Alphabetical.*—The names of candidates for every office shall be arranged alphabetically according to their surnames, under the designation of the office;
> * * *
> (c) *Columnar listing.* — All candidates for office *shall* as far as possible be placed in one column; but when the names to be printed upon the ticket are over thirty-six, another column may be added in which names *shall* be printed. When two or more columns are used the same number of names, so far as possible, *shall* be printed in each column. * * *." (Emphasis supplied).

In construing the language of Sub-section (c) of Section 94, the Attorney General of Maryland by an opinion dated January 11, 1963 to Mrs. Betty M. Silbert, President, Board of Supervisors of Elections of Baltimore City, 48 Ops. Att'y. Gen. 150, concluded that the requirements of beginning a second vertical column only when there are more than thirty-six names of candidates does not apply to an automatic voting machine, but that it was permissible to use a second vertical column on a vot-

ing machine when all spaces available in the first column have been used. It is clear, we think—as the Attorney General pointed out in his opinion—that (1) the names of all candidates shall, as far as possible, be placed in one column; (2) a second column may not be used until the first vertical column has been completely filled by the names of candidates; and (3) when more than one column is used, each vertical column shall contain, as far as possible, an equal number of names. We agree with the Attorney General's opinion that the thirty-six name requirement in Subsection (c) of Section 94 cannot be complied with in the use of the automatic voting machine ballot because of the limitation of space available when the usual vertical arrangement is used. The other requirements of this Subsection, however, are severable from the thirty-six name column provision and must be given legal effect. See *McKeldin v. Steedman*, 203 Md. 89, 98 A. 2d 561 (1953) and the cases cited in 203 Md. at 104, 98 A. 2d at 567.

The lower court was of the opinion that the words "as far as possible" gave the Board some limited discretion in matters of form and arrangement. We do not agree. We interpret the word "possible" to mean that if the Board is able physically to place a name in the vertical columns on the ballot, it *must* do so. The Board has no discretion in this regard. The use of the word "shall" in the statutory provisions indicates that these provisions are mandatory and that no discretion was intended to be conferred upon the Board to depart from these requirements in the preparation of the ballot. See *Maryland Medical Service v. Carver*, 238 Md. 466, 478-480, 209 A. 2d 582 (1965) and cases cited in the opinion in that case. Cf. *Nugent ex rel. Manning v. LaFrance*, 91 R. I. 398, 164 A. 2d 230 (1960).

Not only is the Board's arrangement of the ballot in the Fifth District not in accordance with the mandatory requirement in regard to the number of names of candidates for the House of Delegates in each column, but it departs from the requirement that the fewest number of columns must be used. The evidence clearly indicates that the Board need use only 7 columns rather than 8 columns and may easily put 5 names in each of those columns rather than 5 names in 3 columns and

4 names in 5 columns. In short, it is entirely *possible* to comply with the requirements of the statute and the Board may not depart from those mandatory requirements.

Statutory requirements of the type involved in this case are generally held to be mandatory requirements. See *Davidowitz v. Philadelphia County,* 324 Pa. 17, 187 Atl. 585 (1936, S. Ct. of Pa.) ; *People, ex rel., Henry v. New York Central Lines,* 381 Ill. 490, 45 N. E. 2d 860 (1942, S. Ct. of Ill.) ; *State, ex rel., Rose v. Ryan,* 119 Ohio App. 363, 200 N. E. 2d 668 (1963, Ct. of Ap. of Ohio, Franklin County). See also 29 C.J.-S. "Elections", §156, page 449.

The Board sought to justify its departure from the statutory requirements for the reason that it was seeking to have a uniform style of ballot for the City as a whole. This might well have some merit so far as the placing of the names of candidates for offices which are voted city-wide is concerned, but we think that reason is without merit when it is sought to be applied to candidates who are voted for on a District and not a city-wide basis. The voters in each legislative district may only vote for the candidates for the House of Delegates in their respective legislative districts and cannot vote for such candidates in districts outside their legislative district. It is difficult to see how an arrangement of names of candidates for the House of Delegates in one district which differs from such an arrangement in another district could result in any confusion or difficulty for the voters in the respective districts. As the testimony of Mrs. Silbert indicates, if the number of such candidates in any one district was less than the number of columns allocated for the names of candidates for the House of Delegates, it would mean that certain columns would have no name at all and would provide a vacant space between the columns containing the last name and the names of the candidates for the office next on the right of the space reserved for the names of candidates for the House of Delegates.

Nor are we impressed by the argument that it would give the candidates for judge of the Municipal Court whose names are listed in the next space reserved for such candidates to the right of the space reserved for names of candidates for the House of Delegates, an unwarranted advantage because of

greater visual exposure if a vacant column were left in a particular district. There is no expert evidence in the record to establish this and we are of the opinion that this is most unlikely as the spaces reserved for the House of Delegates and the Municipal Court are clearly divided by a separating line. Then too, as already pointed out, the Board's arrangement at the present time leaves a blank space opposite the name of the candidate for the Municipal Court listed third in the first column in the Fourth District; if this factor had any validity (and we think it has none) it would give that one candidate an alleged advantage not enjoyed by any other candidate for judge of the Municipal Court. The situation is even more pronounced in the Republican ballot as we have already indicated.

We are mindful that Article 33, Section 11 provides that the Board "shall have charge of and make provision for all elections," etc., and Article 33, Section 93 (a) gives the Board the duty and power to "provide ballots for every election of public offices" but their powers and duties are subject to the mandatory requirements of the other sections of Article 33 and the Board's reasons for departing from those requirements cannot justify its action in regard to the number of columns used and arrangement of names for candidates for the House of Delegates in the Fifth District.

It should also be pointed out that this mandamus action arose *before* the final date fixed in the statute for the establishment of the form of the ballot for the September 13, 1966 primary election so that it was entirely practicable to give the petitioner the relief he was entitled to under the provisions of the statute. Quite different issues and considerations arise when the validity of an election is challenged after the election has been held. We pointed out in *Lexington Volunteer Fire Department, Inc. v. Robidoux,* 218 Md. 195, 146 A. 2d 184 (1958), that *after an election has been held,* the question is whether the failure of a board to follow strictly the prescribed directions of a statute affected the validity, fairness or result of that election. In other words, the Court may cure an error in a ballot prior to an election, but might well decline to hold that such a fault or defect, if uncorrected prior to the election, would render an election ineffective or void in the absence of a statutory requirement to that effect.