825 A.2d 966

ENGINEERING MANAGEMENT SERVICES, INC.

v.

MARYLAND STATE HIGHWAY ADMINISTRATION.

No. 71, Sept. Term, 2002.

Court of Appeals of Maryland.

June 11, 2003.

Philip M. Andrews (Jean E. Lewis, Kramon & Graham, P.A., on brief), Baltimore, for petitioner.

William A. Kahn, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Laurie A. Lyte, Asst. Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J. ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, J.

## I.

State procurement contracts are subject to an exclusive, statutorily-prescribed procedure for resolving disputes. The procedure consists of four parts.[1] First, the dispute must be submitted to the agency procurement officer for attempted resolution.[2] Second, the agency head may approve, disapprove, or modify the procurement officer's decision.[3] Third, the decision of the agency head may be appealed to the Maryland State Board of Contract Appeals ("MSBCA").[4]

---

1. Maryland Code (1974, 2001 Repl.Vol.), State Finance and Procurement Article, §§ 15–215–15–223. Unless otherwise provided, all statutory references are to the Maryland Code (1974, 2001 Repl.Vol.), State Finance and Procurement Article

2. Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–217 states:

 (a) *In General.*—(1) A prospective bidder or offeror, a bidder, or an offeror may submit a protest to the procurement officer.

 (2) A person who has been awarded a procurement contract may submit a contract claim to the procurement officer.

 (b) *Time for submission.*—Except as provided in § 15–219 of this subtitle, a protest or contract claim shall be submitted within the time required under regulations adopted by the primary procurement unit responsible for the procurement.

 See also Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–219(a), (c), & (d).

3. Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–218(d); § 15–219(c) & (d).

4. Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–219(g); § 15–220.

Fourth, the MSBCA's decision is subject to judicial review under the contested case provisions of the Maryland Administrative Procedure Act.[5]

The present case, being the fruit of the foregoing dispute resolution process, arises from a dispute between Engineering Management Services, Inc. ("EMS") and the Maryland State Highway Administration ("SHA") over a contract for the removal of lead paint and the repainting of five bridges in Baltimore and Howard Counties. The dispute revolved around EMS's claim for additional funds to comply with changes in the Federal Occupational Safety and Health Administration ("OSHA") regulations relating to lead exposure of abatement workers which had not been taken into account expressly during the bid and award process. For purposes of EMS's appeal to the MSBCA, the "final decision of the unit" [6] denying EMS's claims occurred on 28 June 1999. EMS timely appealed that final decision to the MSBCA on 27 July 1999.

The SHA filed a "Motion for Summary Disposition," asserting that EMS's notice of claim was untimely. The MSBCA held a hearing at which EMS and SHA presented their respective positions concerning summary disposition. The MSBCA granted SHA's motion on 9 February 2000, and dismissed EMS's appeal, construing against EMS the 30–day "notice [to the procuring unit] of claim" provision of COMAR 21.10.04.02(A) & (C) [7] as an absolute condition precedent to the

---

5. Maryland Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–223.

6. Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–219(g)(1) states: *"Decision not to pay claim—*(1) a decision not to pay a contract claim is a final action for the purposes of appeal to the Appeals Board."

7. COMAR 21.10.04.02(A) states:
 Unless a lesser period is prescribed by law or by contract, a contractor shall file a written notice of a claim relating to a contract with the appropriate procurement officer within 30 days after the basis for the claim is known or should have been known, whichever is earlier.
 COMAR 21.10.04.02(C) states:

MSBCA's jurisdiction to review the final decision of the procuring unit. EMS timely petitioned the Circuit Court for Baltimore City for judicial review of the dismissal.

The Circuit Court reversed the Board's decision and remanded the case, ordering the MSBCA to conduct a hearing on the merits of EMS's claim. The SHA appealed to the Court of Special Appeals. In what ultimately became a reported decision, the Court of Special Appeals reversed the Circuit Court's judgment. *Maryland State Highway Administration v. Engineering Management Services, Inc.*, 147 Md. App. 132, 807 A.2d 1131 (2002). EMS filed a petition for a writ of certiorari in this Court which we granted. *Engineering v. State Highway*, 371 Md. 264, 808 A.2d 808 (2002). In so doing, however, we added a third question to the two presented in EMS's petition.

## II.

The three questions for review are:

"1. Did the Board err in construing the 30–day 'notice of claim' provision of COMAR 21.10.04.02 as an absolute condition precedent to the Board's jurisdiction to review the final decision of a procuring unit?

"2. Did the Board, using an unwritten 'summary disposition' procedure, err in dismissing EMS's appeal based on an allegedly untimely "notice of claim" to the SHA's procurement office, where the undisputed record evidence established that the SHA had actual notice of the facts and circumstances giving rise to EMS's claim, the SHA's denial of EMS's claim was not based on lack of timely notice, EMS's affidavit regarding timeliness was unrebutted, and there is no record evidence of any prejudice to the SHA by timeliness of the notice EMS provided?

"3. Whether, in a contested case involving a claim against a government entity, Maryland Code (1984, 1999 Repl.

---

A notice of claim or a claim that is not filed within the time prescribed in Regulation .02 of this chapter shall be dismissed.

Vol.), Section 10–210(6) of the State Government Article, authorizes an agency to *reject* the claim by summary disposition."

## III.

In March 1993, the SHA issued invitations for bids for the removal of lead-based paint and the repainting of five bridges over I–95 in Baltimore and Howard Counties. The Contract Special Provisions required compliance with the U.S. Environmental Protection Agency ("EPA") National Ambient Air Quality Standards. The relevant extant standard, embodied in 40 C.F.R. Part 50, included a general permissible exposure limit for workers of 150 micrograms of particulate matter per cubic meter. Contract General Provision GP–7.01 required the contractor to "comply with all Federal, State, and local laws, regulations and ordinances applicable to its activities and obligations under this contract." General Provision GP–7.05 additionally subjected the contractor to 29 C.F.R. § 1926, containing federal OSHA regulations, "as revised from time to time."

By letter dated 13 April 1993, the SHA notified EMS that, at bid opening, EMS was the apparent lowest competitive bidder. The SHA issued a Notice of Award to EMS on 21 May 1993. During the time between the bid opening and the Notice of Award, OSHA added a new subsection to 29 C.F.R. § 1926. The new regulations, 29 C.F.R. § 1926.62, were published in the Federal Register on 4 May 1993, with an effective date of 3 June 1993. "Lead Exposure in Construction," 58 Fed.Reg. 26,627 (4 May 1993). The pertinent new regulation imposed a maximum permissible exposure limit for lead inhalation, applicable to construction workers, of 50 micrograms per cubic meter and required protections such as protective clothing and equipment and special hygiene facilities and practices not previously mandated by other regulations.[8]

---

**8.** Prior to promulgation of 19 C.F.R. § 1926.62, OSHA regulations for lead exposure at 29 C.F.R. § 1926 did not apply to construction workers.

On 26 July 1993, SHA issued a Notice to Proceed to EMS. EMS began performance of the Contract on 30 September 1993. The record indicates that EMS began experiencing difficulties with equipment it had procured to perform the contract, resulting in some impatience on the SHA's part. In a letter dated 12 January 1994, EMS attempted to explain its difficulties with the equipment in terms of attempting to meet the EPA requirements, and requested an extension of time to complete the work. On 28 March 1994, the Maryland Occupational Safety and Health Unit (MOSH) of the Division of Labor and Industry adopted for state regulatory purposes the more protective federal OSHA standard in 29 C.F.R. § 1926.62.[9] On 22 April 1994, EMS inquired of the SHA which standard—EPA's 150 micrograms per cubic meter or OSHA's 50 micrograms per cubic meter—applied to the contract. Five days later, on 27 April 1994, SHA advised EMS that the more stringent provision of the "new" OSHA regulations governed.

EMS notified SHA on 2 May 1994 that it was temporarily halting work while it awaited results of tests to evaluate compliance with the new OSHA standards. On 6 March 1995, EMS asked SHA for a 180–day extension due to the impact on productivity of compliance with the OSHA regulations. EMS followed on 13 June 1995 with a written explanation of a claim for additional compensation of $1,244,564.00 to complete work on all five bridges.[10] This amount was reduced eventually to the additional cost of the three bridges on which EMS had completed work to that time. On 11 February 1997, SHA instructed EMS not to complete the remaining work on the contract. SHA and EMS terminated the contract as to the

---

9. See n. 10, *infra.*

10. EMS asserts in its brief that it originally bid the project, under the former COMAR lead abatement regulation 09.12.32 embodying the EPA standard in 40 C.F.R. 50, at rates running between Three Dollars and Fifty Cents and Four Dollars and Fifty Cents per square foot. EMS asserts that under the new OSHA regulations, its final costs ran approximately Thirteen Dollars and Fifty Cents per square foot—an increase on average of Nine Dollars and Fifty Cents per square foot.

remaining two bridges on 20 November 1997, entering into a mutual termination agreement which read in pertinent part as follows:

> SHA and EMS agree to mutually terminate this contract based upon the following conditions:
>
> EMS agrees that the claim and extensions for the amount of $764,036.00 dated February 26, 1997 (currently at Chief Engineer's level) is EMS' final claim on this contract. **It is understood that EMS does not waive any rights of appeal of this claim.** It is the intent of the parties to delete the remainder of the work under the contract without cost or claim to either party.
>
> SHA agrees not to pursue termination for default. In accordance with normal project close out, SHA will pay EMS any and all retention due.
>
> It is understood that SHA has not agreed to make any payments under said claim before the Chief Engineer, **but will consider the claim submitted.**
>
> This is a mutual termination and release of claims with the exception of those mentioned above. The signatures below indicate confirmation of this agreement. (emphasis added)

The SHA procurement officer denied EMS's claims for additional compensation on 28 June 1999. No mention was made in the decision of the procurement officer regarding the timeliness (or not) of EMS's notice of claim for the $764,036.00.

After EMS appealed to the MSBCA, the SHA moved for summary disposition of EMS's claim, arguing, for the first time,[11] that EMS's notice of claim to the SHA was untimely under COMAR 21.10.04.02, requiring that a contractor "shall file a written notice of a claim ... with the appropriate

---

11. The doctrine that failure to raise an issue below precludes its assertion on appeal has no application to proceedings on claims before contracting agencies, such as SHA, as such claims do not become contested cases, to which the APA applies, until they are appealed to the MSBCA. Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–216.

procurement officer within thirty days after the basis for the claim is known or should have been known, whichever is earlier." [12] According to the SHA, the first notice of claim by EMS to the SHA's procurement officer was a letter dated 13 June 1995; however, timely notice was due by the end of October 1993, according to its calculation.[13] In response, EMS asserted that three of its letters to the SHA during contract performance—dated 12 January 1994, 6 March 1995, and 13 June 1995—each served to put the SHA on timely written notice of its claim that EMS required more time and money to perform the contract.

The MSBCA, after observing that it had been recognizing, considering, and granting motions for summary disposition for seventeen years, based on an unwritten summary disposition procedure, granted the SHA's motion for summary disposi-

---

12. As is discussed *infra,* certain determinations by governmental agencies are afforded deference by a reviewing court on the theory that the agency is specialized and has greater expertise within the area of its authority. This presumption of expertise, however, cuts both ways. We observe that the new OSHA standards were published before the SHA let the contract to EMS. It reasonably could be argued that the SHA, therefore, knew or should have known before it let the contract that the more stringent standards would apply, that they would be more expensive to comply with, and that all of the bids it received for the bridges contract, being calculated and submitted prior to the publication of the changes to the OSHA regulations, were likely to be based on a mistaken estimate as to what those cost would be, thus substantially under-calculating the actual costs involved in the anticipated performance of the contract. *See* n. 10, *supra.* Further, that the State was aware that the new regulations were causing problems for bridge painters elsewhere in the State, particularly with regard to acquiring approved respiratory equipment necessary for compliance, was admitted by the State in a 22 June 1994 letter, in the record, addressed to Reglas Painting from the Division of Labor and Industry compliance health manager, Andrew Alcarese.

13. The issue was not raised, and thus we take no position on, whether this timeliness defense by the SHA was estopped or had been waived as a result of the third condition of the Mutual Termination Agreement, *supra* at p. 7, or constitutes a breach of that agreement. *See Chandlee v. Shockley* 219 Md. 493, 498–503, 150 A.2d 438, 441–43 (1959); *Ohio Cas. Ins. Co. v. Hallowell,* 94 Md.App. 444, 456–59, 617 A.2d 1134, 1139–41 (1993).

tion.[14] After making fifteen findings of fact (presumably gleaned from the documentary record before it), the MSBCA selected its own date for when notice of claim was due, one which differed from those advanced by the parties. The MSBCA reasoned that EMS knew or should have known of the basis for its claim by the end of May 1994. The MSBCA then held that, "[s]ince EMS failed to submit its notice of claim in a timely manner, the Board lacks jurisdiction and the appeal must be dismissed." The MSBCA justified this conclusion as follows:

> The Board's subject matter jurisdiction is limited to that which has been specifically conferred upon it by the legislature. *Cherry Hill Constr., Inc.,* MSBCA No.2056, 5 MSBCA ¶ 459 (March19,1999) at p. 26 *citing Univ. of Maryland v. MFE Inc./NCP Architects, Inc.,* 345 Md. 86, 691 A.2d 676 (1997). The Board only has jurisdiction over a claim that is timely filed under and otherwise meets the requirements of COMAR 21.10.04, as that regulation implements the statutory provisions regarding final agency action in contract claims for construction contracts and appeal to the Board as set forth in §§ 15–211, 15–215, 15–217 and 15–219 of the State Finance and Procurement Article. *Cherry Hill,* at page 26. In reviewing the pertinent statutes and regulations relating to timeliness, the Board held that "[c]ontract claims for which notice was not submitted during the regulatory time period are to be dismissed for lack of subject matter jurisdiction without consideration of prejudice." *Cherry Hill,* at pages 24–25.

> The State Finance and Procurement Article (as it was in effect in 1993) provides that a contract claim shall be submitted in the time required under regulations adopted by the primary procurement unit responsible for the pro-

---

14. Petitioner alleges that, in deciding the appeal, the MSBCA attempted to approximate procedures equivalent to those for a motion for summary judgment in a judicial context. See Md. Rule 2–501. While a fair reading of the MSBCA's decision suggests that this was perhaps the MSBCA's intent, it is not entirely clear, for reasons discussed *infra,* that this was in fact what occurred.

curement. Md. State Fin. and Proc.Code Ann. § 15–217(b)(1988). Pursuant to that statutory authority, the Board of Public Works promulgated regulations in COMAR concerning the filing of claims by contractors. The pertinent provision, in effect in 1993, is as follows:

COMAR 21.10.04.02. Filing of Claim by Contractor:

A. Unless a lesser period is prescribed by law or by contract, a Contractor shall file a written notice of a claim relating to a contact with the appropriate procurement officer within thirty days after the basis for the claim is known or should have been known, whichever is earlier.

B. [omitted]

C. A notice of claim or a claim that is not filed within the time prescribed in Regulation .02 of this chapter shall be dismissed.

D. Each procurement contract shall provide notice of the time requirements of this regulation.

In accordance with COMAR 21.10.04.02(D), *supra,* the Contract provides that a notice of claim be filed within a thirty (30) day time frame. Specifically, General Provision 5.14(A) of the Contact provides:

The Contractor shall file a written notice of claim for extension of time, equitable adjustment, extra compensation, damages, or any other matter (whether under or relating to this Contract) with the procurement officer within 30 days after the basis for the claim is known or should have been known, whichever is earlier.

General Provision 5.14(d) of the Contract further advises that a "notice of claim or a claim that is not filled within the prescribed time shall be dismissed."

From the perspective of the MSBCA, strict compliance with COMAR 21.10.04.02—at the procurement officer level—was a condition precedent to the establishment of a claim, and an absolute jurisdictional prerequisite to any subsequent appellate jurisdiction of the MSBCA.

The Circuit Court for Baltimore City reversed the MSBCA action. The Court questioned, but did not decide, the propriety of summary disposition without written procedures. The Court instead held that, regardless of whether the MSBCA could proceed without formal rules, the issue of timeliness, defined by the regulation in question as when a contractor knew or should have known of its claim, was a question of fact. As such, the Circuit Court reasoned that the MSBCA could not render a summary disposition without a fair hearing on the merits of the claim, including its timeliness.

The Circuit Court, in turn, was reversed by the Court of Special Appeals. The intermediate appellate court held that the filing of written notice within 30 days of discovery was a mandatory requirement, and the MSBCA therefore had no discretion to entertain EMS's appeal once it determined that the appeal was based on an untimely notice of claim.

## IV.

We shall consider the questions presented in reverse order. At bottom, this case involves interpretation of statutes and regulations. In *Mayor and Council of Rockville v. Rylyns Enterprises, Inc.*, 372 Md. 514, 549–50, 814 A.2d 469, 490 (2002) citing *Mazor v. Department of Correction,* 279 Md. 355, 360–61, 369 A.2d 82, 86–87 (1977) we reiterated the six principal tenets of statutory interpretation:

[1] The cardinal rule of construction of a statute is to ascertain and carry out the real intention of the Legislature.

[2] The primary source from which we glean this intention is the language of the statute itself.

[3] In construing a statute, we accord the words their ordinary and natural signification.

[4] If reasonably possible, a statute is to be read so that no word, phrase, clause, or sentence is rendered surplusage or meaningless.

[5] Similarly, wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences.

[6] Moreover, if the statute is part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature. (Citations omitted).

There is no doubt that the MSBCA is endowed fundamentally with the power to provide for the disposition of contested cases by summary disposition in appropriate circumstances. Whether it has provided properly for the exercise of that power and articulated the circumstances in which that disposition might be appropriate are at the core of this case. Md. Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–216(b) states:

(b) *Proceedings of Appeals Board.*—The Appeals Board shall conduct its proceedings in accordance with Title 10, subtitle 2 of the State Government Article.

Maryland Code (1974, 1999 Repl Vol.), State Government Article, § 10–210 states:

Unless otherwise precluded by law, an agency or the Office may dispose of a contested case by:

(1) stipulation;

(2) settlement;

(3) consent order;

(4) default;

(5) withdrawal;

(6) summary disposition; or

(7) dismissal.[15]

---

**15.** The General Assembly amended § 10–210, along with other related provisions, in 1993 at the recommendation of the Commission to Revise the Administrative Procedure Act. At that time, the last three mechanisms enumerated in § 10–210, including summary disposition, were added as potential dispositions of a contested case. Although the Commission recommended this amendment, the Commission Report sheds little light on the reason for its addition, stating only that:

The Commission, in reviewing the current law on dispositions, added several additional options available for disposing of contested cases. Testimony presented by the OAH [Office of Administrative Hearings] indicated that these additional options are widely used at present.

While acknowledging that § 10–210 allows for summary disposition, Petitioner argues that such disposition is "otherwise precluded by law" and cannot be utilized by an agency against a citizen due to a procedural conflict between fundamental concepts of administrative law and those of summary judgment jurisprudence. The Petitioner points out that:

> Maryland Rule 2–501(e) provides that a trial court may grant summary judgement when there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment "as a matter of law." Amplifying on this, this Court has held that the trial court may only make rulings as a matter of law; it should " 'resolv[e] no disputed issues of fact.' " Put another way, " '[i]n considering a motion for summary judgment the Court does not attempt to decide any issue of fact or credibility, but only whether such issues exist ...' " All inferences must be resolved against the party moving for summary judgment. This deference to the opponent of a motion for summary judgment continues at the appellate stage. (citations omitted).

This summary of the civil law of summary judgment applicable in our state's Article IV [16] courts is essentially correct. Petitioner continues, however, that under the tenets of administrative law:

> [a]n agency's decision is "reviewed in the light most favorable to the agency," because such decisions carry "a presumption of validity." *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 513, 390 A.2d 1119, 1124(1978). Accordingly, judicial review of the agency decision is limited to determining "whether a reasoning mind could have reached the factual conclusions reached by the agency." *Liberty Nursing Center, Inc. v. Dep't of Health and Mental Hygiene*, 330 Md. 433, 443, 624 A.2d 941, 946 (1993)(citing *Supervisor v.*

---

Report Of The Commission To Revise The Administrative Procedure Act (September 1, 1992) at 23.

A close examination of the minutes of the Commission's meetings reveals scant and unilluminating elaboration on this recommendation.

**16.** Md. Const., Art. IV.

*Asbury Methodist Home,* 313 Md. 614, 616, 547 A.2d 190, 195(1988)). *Accord Resetar v. State Bd. of Educ.,* 284 Md. 537, 399 A.2d 225 (1979)(reviewing court will affirm the administrative action when it concludes that a reasoning mind reasonably could have reached the factual conclusions which the agency has reached). Further, " 'where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences.' " *Courtney v. Bd. of Trustees of Maryland State Ret. Systems,* 285 Md. 356, 362, 402 A.2d 885, 889 (1979)(quoting *Bulluck v. Pelham Wood Apts., supra* ) (citation omitted). *See also A.H. Smith Sand & Gravel Co. v. Dep't of Water Resources,* 270 Md. 652, 313 A.2d 820 (1974)(reviewing court may not substitute its judgment for the expertise of the agency in reviewing the agency's decision.).

This is also a correct statement of law, as far as it goes. Petitioner argues that where the agency is seeking summary judgment, which it equates with summary disposition within the meaning of § 10–210(6), deference to the agency decision or action is in conflict with the tenet of summary judgment jurisprudence that reasonable inferences be drawn in favor of the non-moving party [contractor], and that therefore summary judgment is an inappropriate procedure, as it would not be reviewable on appeal in effect. A careful reading of Petitioner's argument, however, reveals that Petitioner is mixing the proverbial apples and oranges on this record and the relevant statutes and regulations.

██ Petitioner's argument fails to distinguish the various forms of judicial review of administrative decisions under the Administrative Procedure Act (APA).[17] In the APA, Md.Code

---

17. As a preliminary matter, we point out that "[w]e review an administrative agency's decision under the same statutory standard as the Circuit Court. Therefore, we reevaluate the decision of the agency, not the decision of the lower court." *Gigeous v. E. Corr. Inst.,* 363 Md. 481, 495–96, 769 A.2d 912, 921(2001). *See also Dep't. of Health & Mental Hygiene v. Campbell,* 364 Md. 108, 123, 771 A.2d 1051, 1060(2001)("it is the final decision maker at the administrative level, not that of the reviewing court, that is subject to judicial review").

(1974, 1999 Repl.Vol.), State Government Art., § 10–222(h) sets forth six grounds upon which a court can reverse or modify an agency decision if any substantial right of a petitioner has been prejudiced.[18] Section 10–222(h) states:

In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

 It is true, as Petitioner sets forth, that an agency's findings of fact and inferences made in the course of rendering findings of fact are given deferential treatment under "substantial evidence" review [APA, § 10–222(h)(3)(v), *supra*]. *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380–81 (1999); *Travers v. Baltimore Police Dep't,* 115 Md.App. 395, 420, 693 A.2d 378, 390 (1997). Under summary judgment jurisprudence, however, it is not a procedural vehicle to be used to determine factual disputes, but rather to determine whether there is a dispute over a material fact or facts that should be tried. *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144–45, 642 A.2d 219, 224 (1994); *Di Grazia v. County Executive,* 288 Md. 437, 445, 418 A.2d 1191, 1196 (1980). Maryland Rule 2–501(e) instructs that

---

18. See Rochvarg, Arnold, Maryland Administrative Law, 111 132 (2001).

summary judgment is appropriate "where there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law." Whether summary judgment is properly granted as a matter of law is a question of law.[19] The standard for appellate review of a summary judgment is whether it is "legally correct." *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 638–39, 679 A.2d 540, 542 (1996); *Heat & Power Corp. v. Air Prod. & Chemicals, Inc.*, 320 Md. 584, 591–92, 578 A.2d 1202, 1206 (1990). This is the same standard of review we apply to the question of the legal correctness of an administrative agency's decision. *See Banks,* 354 Md. at 67–69, 729 A.2d at 380–81. As a result, there is no significant conflict between the deference given to factual determinations made by an agency and the principles of summary judgment. Whether the same may be said for summary disposition practice at the administrative agency level will be discussed *infra.* In any event, we shall not answer Question 3 because of the reasons stated in our following analysis of Question 2.

## V.

Petitioner next argues, again applying principles of summary judgment jurisprudence, that the MSBCA erred in dismissing EMS's claim where there is documentary evidence showing that there were disputes of material fact, i.e., what was the trigger date for tolling the notice of claim period and whether EMS's claim was timely. Were this case to be scrutinized as a summary judgment action at law, we would agree.

 As we observed, *supra,* the purpose of summary judgment is to determine whether there are facts in dispute that must be resolved through a more formal dispute resolution process, a trial on the merits. As noted, it is not the

---

19. We point out that we can, and will, also review an agency's action under Md.Code (1974, 1999 Repl.Vol.), State Government Art., § 10–222(h)(3)(iii) that the decision results from unlawful procedure. *See infra.*

purpose of summary judgment to resolve issues of material fact. Despite this principle, the MSBCA made fifteen findings of fact, including a determination of when EMS's notice should have been given, a determination which differed from that advanced by either of the parties. Furthermore, because review of the grant of summary judgment is *de novo*, there would exist potentially the question of whether the State is estopped or otherwise waived the notice requirement by its entry into the 20 November 1997 Mutual Termination Agreement.[20] Finally, the regulation in question, COMAR 21.10.04.02, requires that "a contractor shall file a written notice of a claim relating to a contract with the appropriate procurement officer within 30 days after the basis for the claim is known or should have been known, whichever is earlier." We consistently have held that "summary judgment generally is inappropriate when matters—such as knowledge, intent or motive—that ordinarily are reserved for resolution by the fact-finder are essential elements of the plaintiff's case or defense." *Brown v. Dermer,* 357 Md. 344, 355–56, 744 A.2d 47, 53 (2000). Were the present case controlled by our summary judgment jurisprudence, this certainly would appear to be such a case where summary judgment would be inappropriate.[21] As a practical matter, however, this question, as well as most of what we thus far have said in this opinion in response to Petitioner's arguments, is ultimately not disposi-

---

20. See *supra* at n. 13.

21. In Article IV courts, under modern rules of civil procedure, the question of whether a statute [of limitations] which operates as a condition precedent to the formation of a claim is more appropriately treated as a Rule 2–322(b)(2) motion to dismiss for failure to state a claim upon which relief can be granted. Where "matters outside the pleadings are presented to and not excluded by the court [such as affidavits], [a § 2–322(b)(2) motion to dismiss] should be treated as one for summary judgment and disposed of as provided in Rule 2–501." Md. Rule 2–322(c); *Freeburger v. Bichell,* 135 Md.App. 680, 685, 763 A.2d 1226, 1229 (2000); *Hrehorovich v. Harbor Hosp. Ctr.,* 93 Md.App. 772, 782–83, 614 A.2d 1021, 1026 (1992). As noted, however, this is not the case in all circumstances. See *Brown v. Dermer,* 357 Md. 344, 355–56, 744 A.2d 47, 53 (2000).

tive of this case, though it may be potentially relevant upon remand.

■ The administrative action under review *sub judice* was decided ostensibly under the grant to the MSBCA of the power to enter a summary disposition, not summary judgment, in a contested case. APA, § 10–210, does not describe the modality of action as summary judgment, nor does the MSBCA's decision in the present case, except in a footnote.[22] The question thus becomes whether the MSBCA properly implemented the ability to grant summary disposition, and, if so, whether it properly granted it in this case. A more puzzling question is how it is that we are supposed to make that determination.

APA, § 10–206(b), states that "[e]ach agency may adopt regulations to govern procedures under this subtitle and practice before the agency in contested cases." The enabling statute for the MSBCA is a bit more direct and specific. Md.Code (1974, 2002 Repl.Vol.), State Finance and Procurement Art., § 15–210 states:

> In accordance with Title 10, Subtitle 1 of the State Government Article [the APA], the Appeals Board *shall* adopt regulations that provide for informal, expeditious, and inexpensive resolution of appeals before the Appeals Board.

(Emphasis added).[23] We have not found, nor has either party directed us to, any regulation of the MSBCA that provides for

---

**22.** In footnote 3 of its decision, the MSBCA observed that "[t]he word 'disposition' is used rather than 'judgment' because the Board is not a court and has no equitable power or equitable jurisdiction." We note as an aside, however, that the initial draft of House Bill 877, Chapter 59, Laws 1993 contained the term "Summary Judgment." The Commission To Revise The Administrative Procedure Act, at page 9 of the minutes of it's 16 June 1992 meeting, changed this language to "Summary Disposition." No explanation for the change appears in the records of the Commission or the Legislative history of the bill.

**23.** Chapter 59, Laws 1993 (H.B.877) intended that each agency so authorized promulgate their own procedural rules. Page 4 of the 1 September 1992 Report of the Commission To Revise The Administrative Procedure Act states that:

summary disposition procedures.[24]

Where an agency decision flows from an unlawful procedure, that decision is subject to reversal or modification by the courts. APA, § 10–222(h)(3)(iii).[25] We have recognized this principal of our State's administrative law as being similar to the federal *Accardi* doctrine.[26] *MTA v. King,* 369 Md. 274, 286–87, 799 A.2d 1246, 1252–53 (2002). *See Pollock v. Patuxent Institution Bd. of Review,* 374 Md. 463, 823 A.2d 626 (2003)(expressly adopting for purposes of Maryland administrative law a version of the *Accardi* doctrine). Contrary to the conduct of the MSBCA, procedural rules must be promulgated by formal rulemaking and cannot be made in ad hoc fashion through adjudication. Under § 10–101(g)(1), "the Maryland APA does not follow the federal APA's exceptions to the rulemaking procedures [5 U.S.C. § 553(b)(3)(A) & (B)], and indeed expressly rejects most of the federal APA exceptions. Under the Maryland APA, an agency's organizational rules, procedural rules, interpretive rules and statements of

> Unlike the Model [State Administrative Procedure] Act, which includes a provision addressing every conceivable procedural issue, Maryland's APA should create a statutory framework for the administrative process, addressing only the most important and fundamental policy issues. The procedural fine points of administrative practice are more appropriately addressed in rules or regulations which can be changed more easily and frequently than can a statute.

Apparently the Legislature concurred, in the main, with this approach for all covered State agencies (save the Department of the Environment-see note 31, *infra.*) because it did not endeavor in the legislation to establish "the procedural fine points of administrative procedure," leaving that to the agencies to accomplish through written regulation.

24. MSBCA procedural regulations are set forth in COMAR. COMAR 21.02.02.03 Regulations and Procedure states: "The administrative procedures and regulations of the Appeals Board appear under Subtitle 10, Administrative and Civil Remedies, of this title." See COMAR 21.10.06.

25. Rochvarg, at 118.

26. *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)(federal administrative agency decision is subject to invalidation because of the agency's "failure to exercise its own discretion contrary to existing valid regulation").

policy all must go through the same procedures as required for legislative rules." [27] While an agency has some discretion with regard to policy questions whether to proceed by regulation or by decisional rule, *Maryland Ass'n of Health Maint. Org. v. Health Serv. Cost Review Comm'n,* 356 Md. 581, 600, 741 A.2d 483, 493 (1999), in Maryland, this discretion does not exist as to procedural matters.[28] As we pointed out in *Calvert County v. Howlin,* 364 Md. 301, 322, 772 A.2d 1209, 1221 (2001), in a non-APA context: [29]

---

27. Rochvarg, Arnold, Maryland Administrative Law, at 154–55.

28. A regulation is defined by APA, § 10–101(g) as follows:

(1) "Regulation" means a statement or an amendment or repeal of a statement that:
(i) has general application;
(ii) has future effect;
(iii) Is adopted by a unit to:
 1. Detail or carry out a law that the unit administers;
 2. Govern organization of the unit;
 3. Govern the procedure of the unit; or
 4. Govern practice before the unit; and
(iv) is an any form, including:
 1. A guideline;
 2. A rule;
 3. A standard;
 4. A statement of interpretation; or
 5. A statement of policy.

29. While both *Howlin* and the case *sub judice* involve circumstances where the agency in question failed to promulgate, through rulemaking, procedural rules, as opposed to agency policy determinations, in reaching this decision we distinguish factually the case *sub judice* from *Howlin.* In *Howlin,* we found that, although the County Planning Commission failed to promulgate procedural rules, no due process right was violated by that omission. That determination is fairly limited to the specific facts of *Howlin,* a case to which the State APA did not apply, and is not applicable to the case *sub judice.* At issue in *Howlin* was the fact that the Planning Commission had no rules of procedure for a unique, one-of-a-kind hearing re-opening a prior Commission determination that subsequently was found to be in error. While the Planning Commission announced procedural rules, which were agreed to, immediately prior to the hearing, it failed to announce what burden of proof would have to be met. We held that, while the failure to have rules in place violated the Commission's enabling statute, no injury or prejudice resulted from the failure to announce a standard because the developer/applicant was unable to meet even the lowest burden, that of

Rules for the transaction of business of public agencies are intended to be normative principles formally adopted by the agency in written form, in accordance with whatever procedural requirements may apply, and, upon request, made available in advance to persons dealing with the agency. Only then can there be some assurance against arbitrary and capricious conduct on the part of the agency.

Here, the MSBCA was directed by statute that it "shall adopt regulations," yet it failed to do so with regard to summary disposition. In *Tranen v. Aziz*, 59 Md.App. 528, 534–35, 476 A.2d 1170, 1173 (1984), the Court of Special Appeals correctly observed that:

[t]he term "shall" is presumed mandatory on the parties, denoting "an imperative obligation inconsistent with the exercise of discretion." *Johnson v. State*, 282 Md. 314, 321, 384 A.2d 709 (1978) *citing Bright v. Unsat. C. & J. Fund Bd.*, 275 Md. 165, 169, 338 A.2d 248 (1975). *Accord In re Dewayne H.*, 290 Md. 401, 404, 430 A.2d 76 (1981); *In re James S.*, 286 Md. 702, 706–08, 410 A.2d 586 (1980) quoting *State v. Hicks*, 285 Md. 310, 334, 403 A.2d 356 (1979); *People's Counsel v. Pub. Serv. Comm'n*, 52 Md.App. 715, 719–20, 451 A.2d 945 (1982).

"Shall" and "must" have been employed synonymously to foreclose discretion. *Resnick v. Board of Elections*, 244 Md. 55, 62, 222 A.2d 385 (1966). The term "must" imposes a positive, absolute duty, *see Calvert County Com'rs v. Gibson*, 36 Md. 229, 236–37 (1872), and has been defined as "compulsion or obligation" or "requirement or prerequisite." American Heritage Dictionary, 865 (1976).[30]

---

preponderance of the evidence. We did not hold, and *Howlin* does not stand for the proposition, that an agency can avoid its obligation to promulgate procedural rules by merely announcing them prior to proceeding in a contested case.

**30.** Such terminology, however, need not be construed as mandatory if the context indicates otherwise. *People's Counsel v. Pub. Serv. Comm'n.*, 52 Md.App. 715, 720–21, 451 A.2d 945, 948 (1982); *Resetar v. State Bd. of Educ.*, 284 Md. 537, 547, 399 A.2d 225 (1979); *Blumenthal v. Clerk of Cir. Ct.*, 278 Md. 398, 408, 365 A.2d 279 (1976). Such is not

As a result, the MSBCA violated the procedures set forth in its enabling statute when it proceeded to grant a summary disposition in the present case in the absence of adopted rules of procedure.

 The SHA argues, and the Court of Special Appeals agreed, that the issue of the MSBCA's failure to promulgate rules was not preserved for review as EMS failed to raise the issue during the proceedings before the MSBCA. Judicial review of administrative decisions generally is limited to the issues raised before the agency. *Mayor and Council of Rockville v. Woodmont Country Club,* 348 Md. 572, 582, n. 3, 705 A.2d 301, 305, n. 3 (1998)(*citing Ins. Comm'r of the State of Maryland v. Equitable Life Assurance. Soc'y. of the United States,* 339 Md. 596, 634, 664 A.2d 862, 881 (1995)). We reach this issue, however, not because EMS raised it on appeal, but rather because it is an integral, and thus unavoidable, component of our determination of the properly raised issue of whether the MSBCA's grant of summary disposition was appropriate in this case. This is because the MSBCA's failure to adopt pertinent procedural rules in the case *sub judice* interferes with the ability of the courts to perform their constitutional function of review. *Criminal Injuries Comp. Bd. v. Gould,* 273 Md. 486, 500–503, 331 A.2d 55, 65–66 (1975).

As we pointed out, *supra,* APA, § 10–222(h) sets forth six grounds upon which a court may reverse or modify an agency decision if any substantial right of a petitioner has been prejudiced, among which are any finding, conclusion, or decision which results from an unlawful procedure, and any finding, conclusion, or decision which is affected by any other error of law. In the case *sub judice,* the MSBCA has failed to define what a "summary disposition" is, or to set forth by what standards and under what conditions it is appropriate that a summary disposition may be sought or granted, or what procedures will be utilized by the MSBCA to make such a determination. Absent such standards, procedures, and defi-

the case here because the absence of written procedures raises issues of notice, fundamental fairness, and the standard of review.

nitions, the courts cannot make a determination as to whether, in application, an error of law or procedure otherwise occurred at the administrative level.[31] We only may reverse the decision of the MSBCA on the ground that it utilized an unlawful procedure by not adopting relevant procedures as required under its enabling statute, Md.Code (1974, 2002 Repl.Vol.), State Finance and Procurement Art., § 15–210. Thus, while there can be no doubt that APA, § 10–210 permits agencies to dispose of cases by summary disposition, we hold that the MSBCA is required to promulgate proper descriptions and procedures through formal rulemaking before it may do so henceforth.[32]

# VI

Concluding that the MSBCA utilized an unlawful procedure to dispose of EMS's claim, we could end our analysis. In this instance, however, because a substantive determination was made by the MSBCA which we regard as being potentially

---

**31.** Interestingly, House Bill 877, Chapter 59, Laws 1993 did establish detailed procedural rules for summary disposition for the Department of the Environment, codified at Maryland Code (1974, 1996 Repl.Vol.), Environment Article, § 1–606, which states in relevant part:

(d) *Motion for summary decision.*—(1) Any party to a contested case hearing, **including the Department,** may file at any time a motion for a summary decision on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to a decision as a matter of law.

(2) The motion, any response and the decision of the administrative law judge or other official conducting the hearing shall comply with the requirements of Maryland Rule of Civil Procedure 2–501. (Emphasis added).

Section 1–106 also sets forth, among other things, the rules for partial summary disposition. *See also* COMAR 28.02.01.16(C) & (D), applicable to the Office of Administrative Hearings.

**32.** Were the MSBCA to adopt rules substantially consistent with summary judgment principles as employed by the civil courts, there could be little doubt as to the propriety of such an approach. Rules that facilitate the summary disposition of contested cases beyond those amenable to the application of those principles, however, risk raising significant questions of the proper application of the APA and other State administrative law principles.

erroneous in another regard, we shall comment on that as well.

 As discussed, *supra*, Md.Code (1974, 2002 Repl.Vol.), State Finance and Procurement Art., § 15–217(b) mandates that a contract claim "shall be submitted within the time required under regulations adopted by the primary procurement unit responsible for the procurement." Pursuant to this statute, the procurement regulations require that "a contractor shall file a written notice of a claim relating to a contract with the appropriate procurement officer within 30 days after the basis for the claim is known or should have been known, whichever is earlier." COMAR 21.10.04.02(A).[33] These regulations also state that "[a] notice of claim or [an explanation of] a claim that is not filed within the time prescribed in Regulation .02 shall be dismissed" by the procurement officer. COMAR 21.10.04.02(C). The MSBCA, relying entirely on its own prior reasoning in *Cherry Hill Constr., Inc.*, MSBCA No.2056, 5 MSBCA ¶ 549 (1999), asserted that this requirement is a condition precedent to its exercise of jurisdiction, and dismissed EMS's appeal on those grounds.[34] Such an analysis appears incorrect.[35]

---

33. Effective October 1, 1996, the 30 day notice of claim requirement regulation was incorporated into the statutory framework. Md.Code (1974, 2002 Repl.Vol.), State Finance and Procurement Art., § 15–219(a).

34. See COMAR 21.10.06.05, Dismissal For Lack of Jurisdiction:

 A motion addressed to the jurisdiction of the Appeals Board shall be filed promptly. A hearing on the motion shall be afforded on application of either party, unless the Appeals Board determines that its decision on the motion will be deferred pending a hearing on both the merits of the appeal and the motion. The Appeals Board shall have the right at any time and on its own motion to raise the issue of its jurisdiction to proceed with a particular case, and shall do so by an appropriate order, affording the parties an opportunity to be heard.

35. Whether called summary judgment or summary disposition, what the MSBCA in fact did was exercise its jurisdiction for the purposes of determining its jurisdiction. *Highfield Water Co. v. Washington County Sanitary Dist.*, 295 Md. 410, 415–16, 456 A.2d 371, 374 (1983).

The MSBCA decision took the position that it had no subject matter jurisdiction where a condition precedent to the establishment of a claim had failed to occur, following its own reasoning in *Cherry Hill.* To understand the MSBCA's reasoning requires reciting the statutes, the interpretation of which the MSBCA's *Cherry Hill* action was based. Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–217(b) states in relevant part:

(b) *Time for submission.*—Except a provided in § 15–219 of this subtitle, a protest or contract claim shall be submitted within the time required under regulations adopted by the primary procurement unit responsible for the procurement.

Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–219 states in relevant part:

(a) *Notice of claim must be filed within 30 days.*—Except to the extent a shorter period is prescribed by regulation governing differing site conditions,[36] a contractor shall file a written notice of a claim relating to a procurement contract for construction within 30 days after the basis for the claim is known or should have been known.

(b) *Explanation of claim.*—Unless extended by the unit, within 90 days after submitting a notice of a contract claim under a procurement contract for construction, a contractor shall submit to the unit a written explanation that states:

(1) the amount of the contract claim;

(2) the facts on which the contract claim is based; and

(3) all relevant data and correspondence that may substantiate the contract claim.

In response to these statutes, COMAR 21.10.04.02 was promulgated,[37] which states in relevant part:

---

**36.** COMAR 21.07.02.05

**37.** We note that COMAR 21.10.04.02 B contains a shorter time period than that proscribed by Md.Code (1974, 2001 Repl.Vol.), State Finance and Procurement Art., § 15–219(b). An agency may not shorten the time provided for by the Legislature.

A. Unless a lesser period is prescribed by law or contract, a contractor shall file a written notice of a claim relating to a contract with the appropriate procurement officer within 30 days after the basis for the claim is known or should have been known, whichever is earlier.

B. Contemporaneously with or within 30 days of the filing of a notice of a claim, but no later than the date that final payment is made, a contractor shall submit the claim to the appropriate procurement officer. On conditions the procurement officer considers satisfactory to the unit, the procurement officer may extend the time in which a contractor, after timely submitting a notice of claim, must submit a contract claim under a procurement contract for construction. An example of when a procurement officer may grant an extension includes situations in which the procurement officer finds that a contemporaneous or timely cost quantification following the filing of the notice of claim is impossible or impractical. The claim shall be in writing and shall contain:

(1) An explanation of the claim, including reference to all contact provisions upon which it is based;

(2) The amount of the claim;

(3) The facts upon which the claim is based;

(4) All pertinent data and correspondence that the contractor relies upon to substantiate the claim; and

(5) A certification by a senior official, officer, or general partner of the contractor or the subcontractor, as applicable, that, to the best of the person's knowledge and belief, the claim is made in good faith, supporting data are accurate and complete, and the amount requested accurately reflects the contract adjustment for which the person believes the procurement agency is liable.

C. A notice of claim or a claim that is not filed within the time prescribed in Regulation .20 of this chapter shall be dismissed.

D. Each procurement contract shall provide notice of the time requirements of this regulation.

The MSBCA in *Cherry Hill* compared sections A and B of COMAR 21.10.04.02 and noted its view that it possessed considerably more discretion when determining whether a claim is filed timely under section B than under section A. It then concluded that "untimely notice is sometimes a jurisdictional issue, and sometimes a defense to a claim, depending upon which clause is controlling—the 30–day requirement for filing notice of a claim is jurisdictional; documentation of that claim is more a matter of discretion on the part of the Agency and the Board, and therefore falls more towards a defense to a claim." [38] *Cherry Hill* at ¶ 458–59. We reject this conclusion.

Relying on its reasoning in *Cherry Hill,* the MSBCA in the case *sub judice* concluded that the notice requirement was a condition precedent to the existence of a claim, and thus to its exercise of jurisdiction. The MSBCA appears to reason that COMAR 21.10.04.02(A) may not be waived expressly, and therefore a failure to make a timely claim necessarily precludes all circumstances where the existence of a valid claim might arise, and also prevents the creation of subject matter jurisdiction.[39] The MSBCA overlooks, however, the possibility of equitable estoppel.

In *Chandlee v. Shockley,* 219 Md. 493, 498–503, 150 A.2d 438, 441–443 (1959), involving a limitations defense to a negligence suit against the executor of an alleged tortfeasor's estate, we noted:

> In an ordinary statute of limitation, the remedy may be waived. On the other hand, most courts have held that if the statute creates a new cause of action with a time limit as a condition precedent, such limit cannot be extended by waiver or estoppel. The cases are collected in the notes and annotations in 77 A.L.R. 1044, 1050; 130 A.L.R. 8, 15; 15

---

**38.** We point out in passing that the discretion exercised in COMAR 21.10.04.02(B) additionally would be subject to review under the "arbitrary or capricious" standard of APA, § 10–222(h)(3)(vi).

**39.** *But see People's Counsel v. Pub. Serv. Comm.,* 52 Md.App. 715, 720–21, 451 A.2d 945, 948 (1982). *See also Tranen v. Aziz,* 59 Md.App. 528, 476 A.2d 1170,(1984).

A.L.R.2d 500, 24 A.L.R.2d 1413, 1418. Some states do not recognize the distinction between the two types of statute— see note in 67 A.L.R. 1070, 1074—and some writers think the distinction is unsound. See 63 Harv. L.Rev. 1177, 1186, 1234.

Even where the distinction is recognized and the statute involved is substantive and creates the right rather than limits the remedy, the rule that the controlling period of time may not be tolled never has been held to be immutable under all circumstances.

In *Ohio Cas. Ins. Co. v. Hallowell,* 94 Md.App. 444, 456–59, 617 A.2d 1134, 1139–41 (1993), the Court of Special Appeals set forth in some detail the Maryland decisions since *Chandlee,* and correctly concluded that a statute of limitations which is substantive and creates the right [a condition precedent] "can be waived if there is sufficient evidence of inducement, estoppel, fraud or waiver." 94 Md.App. at 459, 617 A.2d at 1141. Because a condition precedent can be met by estoppel, and estoppel is a factual matter which can be determined only upon a full hearing on the merits, it is inappropriate to view a statute [of limitations] which exists as a condition precedent to a claim in a summary judgment context to be a matter of subject matter jurisdiction to which issues of estoppel and waiver may not be considered [under Maryland administrative law]. We conclude, therefore, that the issue of untimely notice would be a defense and a factual question to be determined during the course of a full hearing on the merits, and not a jurisdictional bar to the pursuit of a contractor's claim.[40]

---

**40.** A condition precedent is in effect an element necessary to the existence of a claim. *See* note 23, *supra.* We reiterate, therefore, that if summary disposition in administrative practice is akin to summary judgment under the Maryland Rules, then summary disposition is an inappropriate vehicle for the resolution of this dispute. The requirement in question *sub judice* requires that a claim be made within 30 days of the time the contractor knew or should have know that a claim existed, whichever is earlier. As we pointed out, *supra,* "summary judgment generally is inappropriate when matters—such as knowledge, intent or motive—that ordinarily are reserved for resolution by the fact-

As a result, we further conclude that the MSBCA had jurisdiction to hear this claim on the merits. As we pointed out in *Board of License Comm'rs v. Corridor Wine, Inc.*, 361 Md. 403, 417–18, 761 A.2d 916, 923 (2000):

> Judge J. Dudley Digges for this Court, in *First Federated Commodity Trust Corp. v. Commissioner*, 272 Md. 329, 335, 322 A.2d 539, 543 (1974), set forth the general test for determining the subject matter jurisdiction of a tribunal: "If by that law which defines the authority of the court, a judicial body is given the *power* to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction." *See also Board of Nursing v. Nechay*, 347 Md. 396, 405–407, 701 A.2d 405, 410–411 (1997). Art. 2B of the Maryland Code clearly gives the Board the power to render a decision over the class of cases within which the present case falls.
>
> Simply because a statutory provision directs a court or an adjudicatory agency to decide a case in a particular way, if certain circumstances are shown, does not create an issue going to the court's or agency's subject matter jurisdiction. There have been numerous cases in this Court involving the situation where a trial court or an adjudicatory agency has jurisdiction over the subject matter, but where a statute directs the court or agency, under certain circumstances, to exercise its jurisdiction in a particular way, or to rule in favor of a respondent, or to dismiss the case, and the tribunal erroneously refuses to do so because of an error of statutory interpretation or an error of fact. In these situations, this Court has regularly held that the matter did not concern the subject matter jurisdiction of the trial court or the agency. [Citations omitted].

The jurisdiction of the MSBCA is set forth in Md.Code (1974, 2002 Repl.Vol.) State Finance and Procurement Ar., § 15–211(a) [41] as follows:

---

finder are essential elements of the plaintiff's case or defense." *Brown*, 357 Md. at 355–56, 744 A.2d at 53.

**41.** See also COMAR 21.02.02.02 Jurisdiction:

(a) *Jurisdiction*—The Appeals Board shall have jurisdiction to hear and decide all appeals arising from the final action of a unit:

(1) on a protest relating to the formation of a procurement contract; or

(2) except for a contract claim relating to a lease of real property, on a contract claim concerning:

(i) breach;

(ii) performance;

(iii) modification; or

(iv) termination.

The administrative statute of limitations pertinent to appeals to the MSBCA is contained in Md.Code (1974, 2002 Repl.Vol.), State Finance and Procurement Art., § 15–220, which states:

(a) *Appeal of final action*—Except for a contract claim related to a lease for real property, a bidder or offeror, a prospective bidder or offeror, or a contractor may appeal the final action of a unit to the Appeals Board.

(b) *Time for filing*—An appeal under this section shall be filed:

(1) for a protest, within 10 days after receipt of a final action; and

(2) for a contract claim, within 30 days after receipt of the notice of a final action.

By statute and regulation, the MSBCA is granted jurisdiction to hear all contract disputes "arising under a contract with any State agency" filed with the MSBCA within 30 days after the

---

The Appeals Board shall have jurisdiction to hear and decide all disputes arising under a contract with any State agency, or as a result of a breach of a contract with any State agency, or as a result of a protest relating to the award of a contract with any State agency except for architectural services or engineering services contracts entered into pursuant to Subtitle 12 of this title. The Appeals Board has no jurisdiction over labor disputes or a contract claim relating to a lease of real property.

contractor is in receipt of the notice of a final action. EMS's appeal was timely filed. The MSBCA had jurisdiction to hear that appeal on the merits. We conclude that the statute of limitations in question here is not an issue of subject matter jurisdiction.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE STATE OF MARYLAND.**